J-S08044-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: A.T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.H.-H., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | No. 1644 WDA 2017 |

Appeal from the Order Filed October 6, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-093-2017

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    FILED MARCH 13, 2018

Appellant, T.H.-H. ("Mother") appeals from the order filed October 6, 2017 in the Allegheny County Orphans' Court, involuntarily terminating her parental rights to her minor son, A.T.S. ("Child"), born in January 2016, pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b). After careful review, we affirm.

The lower court aptly summarized the factual background and procedural history of this case as follows:

> Mother and Father[1] have been involved with [the Office of Children, Youth, and Families (OCYF)] since 2015.  They have two older children who were removed from their home based upon the parent's [sic] ongoing marijuana use and Mother's untreated mental health concerns.  Father had exhibited aggressiveness and anger towards Mother, OCYF caseworkers, and service providers in the home.  He was extremely controlling of Mother and it was

_____

[1] The lower court terminated Mother and Father's parental rights to Child in the same order.  Father did not appeal this ruling.

_____

*   Former Justice specially assigned to the Superior Court.

OCYF's belief that domestic violence was an ongoing concern in the relationship. Mother smoked marijuana during both of her prior pregnancies and her second child tested positive for THC at birth. Mother's older children were removed from her care in July of 2015. During her pregnancy with [Child], Mother made minimal progress in her court ordered goals. Two months prior to the child's birth, Mother was evaluated by the court-appointed psychiatrist, Dr. Bliss. During this evaluation, Mother admitted smoking marijuana during all of her pregnancies, including her current pregnancy. Dr. Bliss opined that Mother could not provide a safe and nurturing home for the children based upon her current mental health functioning, substance abuse, and lack of parenting knowledge and skills.

[Child] was born on January 28, 2016 with a number of serious medical issues and was hospitalized for approximately eight weeks after his birth. OCYF sought and was granted emergency custody of the child on February 3, 2016 while he was still hospitalized. Mother completed a Partial Hospitalization program shortly after [Child's] birth but failed to follow the discharge recommendations upon completion.

An adjudicatory hearing was held on March 15, 2016 and the child was adjudicated dependent pursuant to 42 Pa.C.S. § 6302(1) based upon a stipulation that Mother was in need of OCYF's assistance to care for him. The Court ordered the child be placed in foster care upon his release from the hospital. Mother was ordered to attend medical appointments, sign releases for [Child's] medical treatment, submit to random drug screens, continue treatment at Mercy Behavioral Health, attending parenting through the Achieva Program, work with in-home services, and to be evaluated for domestic violence therapy.

[Child] was placed into foster care on March 28, 2016. A Permanency hearing was held on July 5, 2016. Mother was found to be in minimal compliance. She had not attended [Child's] visits or medical appointments consistently, had not attended mental health treatment consistently, had begun using marijuana again, and failed to provide proof that she engaged in domestic violence therapy. Mother's visits were reduced to once a week and she was again ordered to comply with the Achieva Program, attend medical appointments, continue dual diagnosis treatment, and submit to regular screens. In August of 2016, Mother began working with the Achieva Program.

Dr. Bliss conducted an individual evaluation on October 12, 2016. Mother admitted to smoking marijuana in both September and October. There was also an interactional evaluation with Mother, [Child], and her two other children that day. Dr. Bliss opined that Mother had some obvious parenting deficits despite exhibiting an overall desire to be a good mother. Mother had difficulty attending to all the children's needs during this evaluation. Mother held [Child] throughout the evaluation but rarely interacted with him. When she did set the child down, Mother was not attune to safety concerns around him. In fact, she created a number of safety concerns by placing inappropriately sized toys within [Child's] reach. [Child] sought out his nurse during the interactional evaluation and exhibited very little attachment to Mother. Dr. Bliss discussed [Child's] medical needs with Mother and opined that Mother did not have an adequate understanding of those needs. Additionally, Dr. Bliss opined that Mother did not prioritize her role as a parent.

A Permanency Hearing was held on November 29, 2016. Mother was found to be in minimal compliance. She had not been attending her dual diagnosis treatment or her visits consistently. She missed a number of drug screens and tested positive for marijuana two out of the three times she did appear to be tested. Mother was ordered to attend dual diagnosis treatment, work with Achieva, attend screens, and attend [Child's] medical appointments.

A Permanency Hearing was held on March 28, 2017. Mother was found to be in minimal compliance as she had not attended visits or [Child's] medical appointments consistently, had not been attending dual diagnosis treatment consistently, and continued to test positive for marijuana. Mother's goals remained the same as in the previous orders. Later that month, Mother's visits were decreased to bi-weekly. OCYF filed an Aggravated Circumstances Petition against Mother and the Court granted this Petition on May 9, 2017. Mother was discharged from Achieva during this time for lack of progress.

The Petition to Involuntarily Terminate Mother's Parental Rights was filed on June 6, 2017. [Child] was placed in the foster home of S.B. [("Foster Mother")] in July 2017. His former foster home was not a pre-adoptive placement. Due to [Child's]

numerous health concerns, it took some time to find an appropriate long-term placement.

Dr. Bliss conducted an Interactional Evaluation between [Child] and his Foster Mother on August 18, 2017. Dr. Bliss testified that the child appeared to have a strong and positive attachment to her and that she was completely aware of all his medical needs. Dr. Bliss reported that the child appeared to be positively and securely bonded to Foster Mother despite the short time he had been in her care.

Dr. Bliss conducted an Individual Evaluation of Mother and and an Interactional Evaluation between Mother and [Child] on September 12, 2017. Dr. Bliss noted that Mother was somewhat more effective at parenting [Child] than she had been at the previous evaluation. However, she opined that this was likely because he was the only child at the appointment. Mother acknowledged her poor attendance at visits and told Dr. Bliss that she had problems with transportation, illness or had her own medical appointment. When asked specifically about what she does every day, Mother reported that she walks around and looks for employment from 9 AM to 4 PM. It was Doctor Bliss' opinion that Mother was not able to provide a safe and nurturing environment for [Child]. She noted Mother's history with OCYF, her missed visits and lack of involvement with the child's medical appointments, as well as her continued use of marijuana as a basis for this opinion.

Trial Court Opinion, 12/3/17, at 1-6 (internal footnotes omitted).

On September 29, 2017, the lower court held a hearing on OCYF's termination petition. The trial court took the matter under advisement and subsequently issued an order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b). This timely appeal followed.

Mother raises one issue for our review on appeal:

Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of Natural Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief, at 6.

In reviewing the lower court's decision to terminate parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re Adoption of S.P., [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. The trial court's decision, however, should not be reversed merely because the record would support a different result. Id. at [325–26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. See In re R.J.T., [608 Pa. 9, 26–27, 9 A.3d 1179, 1190 (2010)].

In re T.S.M., 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G. & J.G., 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior

to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re C.S., 761 A.2d 1197, 1201 (Pa.Super. 2000) (en banc) (quoting Matter of Adoption of Charles E.D.M. II, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b), which provide as follows:

(a) General rule. -- The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a

- 6 -

period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

(b) Other considerations. -- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2), (5), (8) and (b).

On appeal, Mother essentially concedes that OCYF presented sufficient grounds to warrant the termination of her parental rights under Section 2511(a) as Mother's failed to develop a challenge in her appellate brief with respect to the trial court's conclusions with respect to this section of the Adoption Act.  "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any

other meaningful fashion capable of review, that claim is waived." In re M.Z.T.M.W., 163 A.3d 462, 465–66 (Pa.Super. 2017) (citations omitted).

We may proceed to determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa.Super. 2012). In In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.], [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

In re T.S.M., 620 Pa. at 628–29, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." In re K.Z.S., 946 A.2d 753, 762–63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. ...

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa.Super. 2015) (quotation marks, quotation, and citations omitted).

In this case, the record corroborates the trial court's termination of parental rights pursuant to 2511(b). Mother had minimal contact with Child due to her failure to consistently attend visitation. During an Interactional Evaluation, Dr. Bliss indicated that Mother and Child, who was then eighteen months old, were largely indifferent to each other and thus, had a limited bond. As Dr. Bliss observed that Child was comfortable with most people, including herself, she felt this explained why Child was calm and relaxed in Mother's presence.

The trial court also determined that Mother was woefully unprepared to provide for Child's needs and welfare. Mother lacks a basic understanding of Child's serious medical issues, which include cardiovascular, neurological, and gastrointestinal concerns that require in-home nursing five days a week. Mother does not appear to be capable of meeting Child's special needs, including visiting medical professionals on a regular basis, and attending

physical, speech, and occupational therapy appointments. When Child was required to undergo three major surgeries, Mother showed up extremely late for these operations. Moreover, Mother's mental limitations and lack of parenting skills limit her ability to provide appropriate care for Child.

In comparison, Child is thriving in his foster home and exhibits a strong bond with Foster Mother. Dr. Bliss indicated that in making a determination of whether a child is attached to a caregiver, she notes the child's age and how the child interacts in social situations with different people. She testified that younger children demonstrate attachment to those that they seek out for reassurance and comfort. In her observations, Dr. Bliss noted that Child sought out Foster Mother for reassurance and comfort. Moreover, Foster Mother has given great attention to providing for Child's medical needs, consistently taking Child to his frequent appointments and therapies. Foster Mother is able to focus her attention on Child, as she has no other children in her home.

Thus, as confirmed by the record, termination of parental rights serves Child's needs and welfare. While Mother may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. In re Z.P., 994 A.2d at 1121. As we have stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." Id. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties,

to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." In re B., N.M., 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted). It is speculative when, if ever, Mother will be able to assume parental responsibilities for Child and provide him with the stable and safe environment he deserves.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). We, therefore, affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2018